313-0696, People of the State of Illinois, Appellee, by Maria Chex, Bethany McKee, Appellee, by Neil Patel, v. Joseph Hosey, Appellant, by Kenneth Schmiderer. Mr. Schmiderer? Yes, Your Honor. Good afternoon. Your Honors, in light of some of the arguments raised in the cases cited in the briefs in this appeal, I want to be clear about what this appeal is not about. It's not about effective law enforcement, because this is not a case where a reporter is withholding evidence that goes to whether or not a crime has occurred or by who. And it's not about victims' rights. It's not about what tools should be used to protect defendants from jurors biased by pretrial publicity. In fact, this appeal isn't even about McKee's allegedly essential need to get confidential source information for any aspect of her trial. If it was, she would not have requested extensions on this appeal and then immediately turned around and requested a prompt trial that has long since concluded. This appeal is primarily about the Illinois Reporters' Privilege Act. It emanates from First Amendment protections to the media, and the Illinois Appellate and Supreme Courts have recognized that it was drafted and enacted to preserve the autonomy of the press, to allow reporters to seek the truth without fear that sources will be cut off by unnecessary disclosures, and to permit the public to receive complete, unfettered information. As a result, an order divesting the privilege and forcing disclosure of confidential source is to be a last resort. Now, the statute itself, of course, it starts off by declaring that a court may not compel anyone to disclose the source of any information obtained by a reporter except as provided by the Act. And I want to just highlight on three parts of the statute, relevance, public interest, and alternative sources of information. First, going to relevance. The statute itself doesn't define the scope of relevance, but it certainly ties the term relevance to the nature of the proceedings and to the merits of the claim of defense. And the Illinois Supreme Court in the Polychak case picked up on this theory. In deciding a case on the Act, it determined that a fact is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable. The determination, the outcome of the action, that's what makes it relevant. And that's why the Illinois Supreme Court held that in that case, the identity of the source was directly relevant to an element of the perjury charge that was under investigation. And in fact, as we'll turn to in a second, the Illinois Supreme Court also cited and relied on the Brown v. Virginia case and other cases that we cited the alternative. Now, McKee doesn't argue that Mr. Hosea's source or its circumstances surrounding its disclosure is at all relevant to the determination of the criminal charges against her. In fact, even the circuit court called the issue off topic when it came to the murder charge. So as a result, McKee tries to broaden the concept of relevance to some theoretical possibilities of collateral matters. For example, McKee says she doesn't think that it was an attorney who was the source, but in case it was, then a discovery rule would have been violated. Or, having asked for affidavits to be filed, maybe she'll find out that an affiant, who may or may not be or have been a witness, filed a false one. Or, maybe a grand jury secrecy rules were violated. Of course, no one ever suggested that it was, but who knows, anything's possible. The theory seems to be, hand me the information first, and we'll see if it's relevant to something. Now, the proceeding that we're talking about is the first degree murder trial, right? Yes, yes. Okay, that would be the proceeding. Yes. So then, for the relevancy aspect, given the Supreme Court's interpretation, it's how big is the relevancy box? Sure. Is the relevancy box things that would be relevant for the murder trial, or is it broader than that, and it's relevant because it could have an impact on picking the jury, on whether you can have the same venue, whether or not, you know, some of these other matters that aren't directly related to evidence in a murder charge, but they're related to the trial itself? Well, I think the case law comes up with a very clear dividing line. That, frankly, sounds like a lot in terms of what the relevancy dividing line is. That looks a lot like the statutory connection between relevance and the merits of the claim or defense. So, first of all- I mean, in the Supreme Court case- Right. They take the- they view relevant- standard definitions of relevance are pursuant to 401. We now have an order of 401, but interpretations of what's relevant for the determination of any of the existence of any fact of the case. That would be the murder trial. Well, to the determination of the action, to the outcome of the action. That's right. And now, first, there's a couple parts, a couple parts to answer your question. With respect to picking a jury, this has nothing to do with that. Jurors- there are mechanisms in place to decide if jurors- to protect defendants from potential juror bias. And we've listed them in our briefs, and no court, not anywhere in the country, has a court remotely suggested that divesting a reporter of a statutory privilege has anything to do- will somehow keep a juror from being biased. It doesn't have to do with that. What you see in the case law, though, is a very clear dividing line of cases across the country. And we've identified Illinois Supreme Court, Appellate Court, some lower circuit court cases, courts across the country. A very consistent dividing line. On the one side are cases where reporters have direct evidence going to the elements of the claims where charges are being tried and investigated. The reporter heard a confession. They witnessed a crime. They were given a state secret that was sent to them illegally. Now, that doesn't mean that the privilege is divested, but at least it's relevant to the outcome of the determination of the proceeding, and then the courts go on to determine the other factors, such as public interest factors and exhaustion of resources, and we'll turn to that in a second. But you have to get through the irrelevance hurdle. That's right. On the other side- Before you get to the other side, let me make sure I understand this. There is no allegation that any information contained in your client's article was libelous, slanderous, or anything like that? No, that's not the case, no. And what it is is information that was contained in police reports that shouldn't have been available to the press or police investigations? Well, there was no gag order in place until afterwards, and so our view is that- Okay, but that's their- But yes, that it was just disseminated. That's right. So the issue here is just where did your client get the information, right? And for the purpose of a murder trial, I guess, what's the difference? Well, Your Honor, that was the question we asked the circuit court, and we saw the answer, which is why we're here on appeal, Justice Schmidt. And in fact, the cases that are on the other side, and we've cited many, many of them, these are cases where the source's identity or report or testimony, rather than being directly relevant to the elements of the claim or defense, it goes to something else. Maybe impeaching a witness, attacking credibility, or something other than something collateral to the merits of the claim, like the murder trial. And in fact, in McKee's case, it's even weaker than that here, because she's not actually claiming that the source is relevant to anything. She's saying only that it might be relevant to one of these collateral matters. Instead of showing relevance, making that determination, that showing required in the statute, she's saying, give it to me first, and then I'll figure out what it might be relevant to. That does not satisfy her burden. And nor could she, because it could only be collateral to the elements of the murder charge. Now, the trial judge referred to Supreme Court rules and leaks and discovery. That's right, Judge. And those are exactly the sort of collateral that matters collateral to it. That's right, Your Honor. And we'll talk about public interest in a moment, because that's one of the – well, we just don't believe that that's relevant to the determination of this case. Clearly it's not. And in fact, the circuit court recognized that it was off-topic when it came to the merits of the murder charges. That's right. The reason I went back to picking a jury in that, that's part of the murder trial. So when I said how big is the relevance box, if the relevance box only contains information, facts, the existence of facts or matters that deal with the charges themselves, then it wouldn't go to jury selection necessarily. That's right. But if it's broader than that, it goes to the selection of a fair – you know, having a fair trial and jury selection and how much information is out there so these defendants can have a fair trial. It's a larger box. I would even disagree with that premise, Justice Carter, because we know there is no gab over the place. And so then there's the question of defendants have a fair right to question, well, has pretrial publicity adversely biased jurors? And what steps can they take? They can seek a gab order. They did that. They could – there's voir dire. There's peremptory rights and challenges of jurors. They can seek a change of venue. There are things that address that. We've asked in the briefs, tell us how forcing the disclosure would somehow protect you against a biased juror. Are you now going to let that juror sit on the stand, be a juror because of that? By the way, McKee asked for a bench trial. Although that question itself is down the line. That's a past irrelevance question down to other questions, isn't it? I don't believe it goes to relevance to any aspect of the trial. The question is, if the jurors were biased, what steps, what tools do defendants have to address that? There are some tools. Nobody has ever suggested that the vesting report of a statutory privilege has anything to do with that. Well, how does disclosing the source unring the bell? It doesn't. That's our point. It doesn't. And then we turn to public interest, which is the next standard, which is related. And there is a relationship between relevance and public interest. And this is a difficult burden for the applicant because disclosure must be essential to protect a specific public interest. And here McKee really struggled to identify public interest that had anything to do with the relief she requests. As you said, there is certainly an interest in protecting defendants against biased jurors. But how would this unring the bell? It wouldn't, so it has nothing to do with that. She also says the public has an interest in law enforcement and in courts being able to enforce their orders. And they do. But what does that have to do with this case? There was no gag order in place, and no one is suggesting that a criminal statute was violated by the disclosure, unlike the cases that McKee cited. What's interesting, though, about the public interest argument is that McKee mentioned another public interest to the circuit court that she didn't mention to this court. She argued below, and we cited it in our brief, that if the reporter's privilege is divested, the source could be fired or punished, and then maybe future sources may be scared off from talking to the press. Maybe there will be less First Amendment speech. And now that's a policy that is contrary to the purposes of the statute, which might be why they backed off of it. But the fact that it's out there, it illustrates exactly why this case is so significant to Mr. Hosea and to the media. And then exhaustion of sources. Well, when we look at this proceeding, this murder trial is not the point for the defendant to become a private attorney general to enforce. Sure, of course. And, in fact, some of the cases that are cited, there were investigations, there were grand jury investigations, and some of them the reporter's source identity or the information was relevant to whatever was being investigated. You mentioned a libel case. That was one of the cases, I think. One of the Supreme Court cases, grand jury proceedings. That's right. That's right. Just a couple of points on the exhaustion of sources. And, again, we only get to this point if the information is relevant to the determination of the case. We say it's not. And if the forced disclosure is necessary to protect a significant public interest, we say it's not. But if she satisfied that, she still has to show that other alternative sources of the same information have been exhausted. This is not an easy burden. It's not meant to be. Not easy on parties or circuit courts. I understand that. And it shouldn't be because it's supposed to be divestiture, it's supposed to be a last resort. The statute in the Illinois Supreme Court in a special grand jury case have said all that matters is the possibility, not certainty or probability, the possibility that an alternative source of information was available. Now, we know that there was an alternative possibility for the source. How do we know that? Because McKee's attorney has identified them. Counsel, that's two minutes. Okay. He said we can get a court order of investigation or evidentiary hearing. Now, true, the circuit court didn't grant it. And that's not surprising, because the circuit court said it's not really relevant to the murder trial. But that doesn't mean they can bypass this element of the statute. Just a couple points on the special witness doctrine. We think this applies as well, because part of the circuit court's order goes to something more testimonial  describing it by affidavit of circumstances surrounding the disclosure. This doctrine was initially established to protect judges and attorneys and then it was extended to protect reporters. In so extending it, the court said that it was protecting against intolerable outcomes in a free society that depends on a vigorous, untrammeled press to allow for abuses of the subpoena process. In terms of just one of the elements, was the information not just relevant to the party's case, but essential to it? I'm sorry, necessary. Was it necessary for McKee to be able to defend herself? Well, we know that it wasn't. How do we know that? Because Ms. McKee insisted on going to trial before she had a chance to get the information. The stated purpose that McKee presented to the circuit court, essentially to try to intimidate and dissuade future sources from talking to the press, is a real threat to Mr. Hosea and to others. Now granted, in some cases, there are real competing interests that courts must balance and sometimes those competing interests present a tough case. We think this is not that case. Because an applicant who says, well let me go to trial first, see what happens, give me the stuff then and I'll see what collateral matter it may or may not be relevant to and I'll see what I want to do with it. That is a fishing expedition that is not worthy of a court order threatening Mr. Hosea with jail time. And we ask that the circuit court order be reversed. Thank you. May it please the court. My name is Marie Quinlivan Check. I represent the people of the state of Illinois. There is a motion to dismiss the people from this case and we have opposed that motion. And the reason for that is that we are very much a party to this case. Divestiture exists only in the context of an underlying proceeding. The only proceeding existing here is the murder trial. The people are prosecuting the murder trial. Therefore we have an interest in this case, we are a party to the case, we should be part of this case. We did not waive our interest. Prior to entry of the order, we took a position in the circuit court that said we take no position on the contempt, on the divestiture or on the contempt. Leave that up to the court. However, when the court entered its order, the court involved us. The order involved us. Because the order stretched and speculated. The order involved the state by jeopardizing our underlying case. The order said, well, perhaps the secrecy of the grand jury has been breached. Perhaps there is a discovery violation. There is no dispute that the source of the disclosure will be an issue on appeal. These are all issues that the court has interjected somehow into our underlying criminal case. He's jeopardized the case, and therefore we have an interest in this order. Help me understand just how the source of this information is in any way relevant to anybody's, the state's or the defendant's case. It is absolutely not relevant. It is absolutely not relevant at all. If it's not relevant, then wasn't the order incorrect? Yes, it was. And it's our position that the order was improvidently granted. Although we are the appellee, it is our position that the order was improvidently granted. The only issue that we take that we, the only exception we take to the argument that you just heard from the appellant is that we believe exhaustion has occurred. So, A, it's not relevant. What difference does it make who the source was? This was unfortunate, but it was a breach of protocol. It was not a crime. There's no grand jury investigation to be had here. There's no remedy to be had. The bell has been rung. So it's not relevant. Our only dispute with the appellant is that we believe that exhaustion has taken place. We have no idea who the source is. We have no idea where to start looking. There have been, the amicus brief estimates 500 affidavits introduced, 500 possible sources. Where are we to start if we go back for a hearing? It's our position there's absolutely nothing to be gained by going, there's no relevance, and there's nothing to be gained by going back for a hearing. We're looking for a needle in a haystack. Are we to bring in 500 people, swear them all, have them all testify, and at the end of the day the court still has no remedy because there's no place to go? It is our position that the order was improvidently granted. Thank you. Mr. Patel? Thank you, Your Honor. A co-counsel like that, you got it. Almost the same side. What it seems to be that the question of the day at this point is, how is this relevant to Ms. McKee's case? How is the information? And so, Justice Carter, you can ask the question. We'll make any of the elements of a murder charge more or less probable. Okay. So it's relevant to the proceedings. And you asked, Mr. Schmider, how big is that box? Now, in a criminal case, if evidence is lost, that doesn't necessarily mean that a person is or is not guilty of possession of a controlled substance. There could be a discovery violation there. So it's relevant to investigate to see if there was a discovery violation because there are Supreme Court rules that are in place, which in this case, Supreme Court rules for discovery were imposed the moment the case started, which indicate that police reports need to be kept confidential in the possession of each of the individual parties and that they are not to be disclosed and that failure to keep them confidential is sanctionable. Our Supreme Court, when they talk about relevance in the proceedings, have a smaller box than that. I mean, what element in the murder charges would any of this have application to of what the concern was of the trial judge? I will concede that there is a bit of speculation as to whether or not it would have relevance for the underlying criminal charges. For example, if the source was the lead investigating detective on this case, perhaps I can impeach him. But I think what makes the issue relevant is this, is if we know who leaked these police reports, for example, if it was a prosecutor, that calls into question the state's attorney's office to fairly prosecute Ms. McKee and her co-defendants. They know they're not supposed to leak that stuff. Yet if they did it anyways, then my client shouldn't be prosecuted by that entity. Well, how does that make any element in a murder charge more or less probable? By getting a special prosecutor, my client's due process rights are preserved because at the end of the day, she's not entitled to have just a fair jury. She's entitled to have a fair trial. The process itself needs to maintain integrity. Well, the bail was already wrong, right? Correct. And so identifying the source is going to affect your client's ability to get a fair trial just now. What I would say is this is not a case about whether or not Mr. Hosea should have reported this stuff or not. Once he receives the reports, I agree. The law allows him to make these reports. And there are ways to protect against the pretrial publicity that can flow from that. But this case isn't just about, this issue isn't just about what happens after these reports are leaked. This is about what happened before the reports were leaked, what caused the reports to leak, whether or not somebody violated rules of discovery, whether or not somebody violated ethical rules. My client is facing a criminal charge. And I would submit, based on it being a double murder, it is probably the most significant charge that can be faced in the state of Illinois right now. Regardless of the scope or the gravity of the charge, her rights to a fair trial, which I think the case law pretty much well settles, when going up against First Amendment rights, the balance tips in favor of the defendant. So she has a right to a fair trial. Do you remember my question? And that was, identifying the source would impact your client's right to a fair trial just how? If we can identify the source in a case, for example, if it is a prosecutor, it impacts my client's ability to receive a fair trial because the next step is to see if there's a sanction there, to see if a special prosecutor should be appointed. To make sure that the person who's dealing with this case, the person who has authority over its prosecution, is doing so in a fair manner. Because I would submit to the court that if it was a state actor, for example, a police officer or a member of the state's attorney's office, the third group who had this discovery would have been the defense attorneys in this case. Let's assume it was. A state actor? Reasonable. Yeah, sure. Let's assume it was. It was in front of the lines. But then so what? How does that affect your client's right to a fair trial? I think my client has a right to be prosecuted in a fair and just manner. That means a level playing field. If someone is leaking these reports, we all know how damaging they are. That's why there are rules in place to prevent them from being released. Because this tries her in the court of public opinion before it tries her in a court of law. So the impact it has on my client's ability to receive a fair trial. So then what? So you file a motion to change venue? They do those all the time. But identifying the source isn't going to – the information is already out there in the newspaper. What I would say is changing venue, voir dire, those sorts of remedies, they don't fix the underlying problem. If it was a state actor that did it, that state actor stays with the case. That state actor still follows. That state actor is still in a position to do things to undermine the integrity of the trial, to undermine the integrity of the process, to undermine the defendant's own right to a fair trial. It goes simply beyond the 12 people who could potentially sit in the box. And as it relates to a jury trial, yes, counsel is correct. We did have a bench trial in this case. And I would disagree with his interpretation of we asked for extension after extension and then demanded a fair trial as if that was some sort of devious trial strategy. There's nothing really in the record to support it. But what I would suggest to the court is when you sit down with a client and decide whether or not you're going to have a bench trial or a jury trial, one of the things that's going to take into consideration is do we think as attorneys, can we give the advice that our client is going to receive a fair trial? And so that's something that plays into it as well. So that is an effect of what this leak caused. And it's not – and, Judge, I just want to emphasize this. Mr. Moseley can report this. There's nothing preventing him from doing that. The concerns that we have for Ms. McKee are whether or not she can receive a fair trial knowing that there is somebody out there who took a step to undermine her rights. And somebody in there that leaked the information, I'm still – I'm having a hard time wrapping my brain around how identifying the person that leaked that information, whether it was an assistant state's attorney, whether it was a state's attorney, whether it was a leak detective, or somebody in the police department that had access to this stuff and did it, how disclosing that is – has any effect on the trial itself. What I would say is this, Your Honor, is we have rules in place. And the evolution of this case was there was a motion requesting certain relief. It was sort of granted by the court ordering the affidavits being provided. Those affidavits did not shed any further light on who the source was. So now we have all these affidavits which show that everybody claims that they weren't the source. It seemed very obvious that somebody was not telling the truth in the affidavit. We have the Supreme Court rules which say that this stuff needs to be kept confidential. And if it's disclosed, there's a sanctionable event here. And so between these things, between Judge Keeney's own need to control his own courtroom and to make sure his own rules are complied with to make sure that everybody's on a level playing field, it becomes relevant to see, well, who is this person? Because if this person is out there leaking this material, then guess what? There could be a sanction here. And I'm not suggesting what that sanction is at this point. If that's the standard for disclosing a confidential source, can you imagine a situation where you couldn't conjure up an argument that you've got to – this is why sources are confidential, because they don't want people to know who they are, right? And then nobody owns up to it. And they said, well, gee, Witness A said that they didn't do it, and you've got to order disclosure because maybe Witness A is lying, and then I can impeach Witness A. That would happen in virtually every case. I don't necessarily think that that would be the case here, because in the court order, in the order granting divestiture, Judge Keeney specifically said it was to be an in-camera inspection. And it was only upon him making a finding based on the information that was tended to him would it be released outright. And I believe it's simply more than just whether or not a witness can be impeached for their credibility. I believe if we consider what happened, if we just assume that it was a state actor, then I think it puts in a great question whether or not they should be sanctioned for their actions. There are rules in place, not only ethical rules, but – Well, if they should be sanctioned for their actions, that's another matter. But it doesn't have any effect. It has nothing to do with the ability to defend your client. I disagree with that, Your Honor, because as this Court knows, a sanction in a case can take on many forms. It could be evidentiary in nature. It could be a dismissal of the indictment. It could be a jury instruction where an inference can be made. It can lead to the appointment of a special prosecutor, which would allow for a more fair process between the defendant and the person that's prosecuting her. And so I disagree that. I would suggest that the sanction in this case could be broad enough or could be powerful enough that that could have a material impact on the defendant's case. I can't say what that is because I don't know who the source is. And so we did file a motion during the trial proceedings requesting that the case be dismissed or requesting a sanction based on a violation of my client's due process rights. Judge Kinney indicated, because I don't know who the source is, I can't craft a sanction. He didn't say that the motion was denied. He ultimately took it under advisement and left that issue open. And so what I would suggest to the Court is at the trial level, the judge who is involved in this case, who had the opportunity to see these things unfold, was in the best position to say what's relevant, what's necessary for the case. Do you think there's a chance in the world that any judge would say, okay, a state act would dismiss this indictment because somebody leaked that information? I would say probably not. You're a master of understatement. But if I may add, I can easily envision a judge crafting a sanction saying, Will County State's Attorney's Office is out, the Attorney General's are in. Here's my problem when you're giving those answers. We have a narrow issue in front of us, whether there's divestiture. Correct. And there's a statute dealing with divestiture. Yes. And the reason I talked about boxes of relevancy before is it's an interpretation of this statute, whether or not you can proceed under the statute to get this divestiture. Yes. The Supreme Court of Illinois has ruled on this matter. Yes. And they have said that the fact is relevant in the proceedings if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Everything you're talking about primarily is about other discovery rules, the sanctity of the process and the fact that people are supposed to follow the rules when they go to trial. We're talking about having someone say who their source was. That's a different statute. So there can still be these sanctions if there are motions and so forth. But it's not covered by the Supreme Court's interpretation of the statute, is it? What I would say is that the relevancy of the proceedings, it's defined pretty clearly in the Supreme Court case, and I'm not going to disagree with the Court's resuscitation of the holding. But what I would say is that it's relevant to the proceedings. The proceedings in this case is a murder case where Supreme Court rules are governing discovery, where ethical rules are governing the behavior of attorneys. But the Supreme Court rules on discovery and the Supreme Court rules on ethical rules, are they part of the existence of any fact that is of consequence in the determination of the action that is more or less probable in the elements of these murder charges? I would argue that it is. Otherwise, there wouldn't be any attempts to enforce discovery rules in criminal cases. There wouldn't be a request to make sanctions in discovery violations in criminal cases. That's the last one minute. Well, did the evidence, did the information contained in those articles, did that come into evidence at the trial? Some of it did, some of it did not. And I would suggest that because it was a bench proceeding, I'm sure the courts recognize that sometimes the proceedings in front of a bench are a little bit different than the more formalized jury process. And there was no, was there ever even a motion for a change of venue? No, there was not, Your Honor. So the defendant was satisfied that he hadn't been prejudiced enough to think that he had to get out of Lowell County to have a fair trial. I would submit that because there was a bench trial, that some of those fair trial issues are dealt with. However, when we consider what happened as a result of the leak, I have to advise my client whether or not she can receive a fair trial anyway. Because if we're doing a jury trial in Will County or we're doing a trial in southern Illinois, it could be the same possibilities of these police reports properly being reported on coming out before and during the trial itself. And that's something that, as an attorney, I have to be able to address. And so I would suggest that the leak impacted my client's ability to seek that jury trial on a fundamental level. Is it a good idea to have a jury trial at all? Because I think it's pretty well settled that no matter what happens, there is no absolutely unbiased jury, that all the voir dire in the world isn't going to reveal a juror who is absolutely ignorant of everything or is completely free of any biases, prejudices, or sympathy. The best we can get is close enough. And so I would suggest that because those things weren't sought, it limits my ability or limits our ability to advise Ms. McKee. Bench trial or jury trial? Well, you shouldn't do a jury trial because of these reasons. And so by weighing that and making that decision, she opted for a bench trial. Counsel's time. So I'm going to give you a couple extra seconds because the two minutes got used up by the state who really wasn't here to help you. So if it was somebody from the state's attorney's office? Yes. Okay. Bench trial or jury trial? I would first move to disqualify the Will County State's Attorney's Office as being the prosecutor. So that would be the first thing I would have immediately done. Okay. So now you've got the special prosecutor from the Attorney General. Yes. Bench trial or jury trial? At that point, I would discuss with the special prosecutor whether or not there was a potential resolution or not, and then I would make my decision based on what they had to say. Okay. In this particular case, I would argue that. So now, okay, so it's somebody in the police department who did it? Yes. Okay. Bench trial or jury trial? Again, it's the same thing. I would first see if there's a sanctionable event that can be crafted from the court to see whether or not I should get a special prosecutor appointed, a jury instruction appointed, perhaps a suppression of the testimony of that witness or the suppression of evidence that that witness was associated with, and then I have to gauge what kind of case I have at that point. May I just be permitted some brief comments? Sure. Absolutely. As it relates to what the state's attorney had to say, they specifically said on the record moments before the divestiture hearing started, obviously divestiture does not involve us. When Judge Kinney made his ruling, they made no written objection, they made no oral objection. When the trial court was prepared to hold Mr. Hosey in contempt, the state indicated the state has no position on the matter with Mr. Hosey. Now, we're at the appellate court and they have a position, and I would suggest to the court that they don't have standing to be here. As it relates to the issue of exhaustion, I believe the issue of exhaustion is well satisfied. I believe the issue of public interest is well satisfied. I think a court has its own authority to enforce its own rules to make sure that justice is effectively administrated, and I think the case law says that, yes, law enforcement, police officers, the investigation of crimes, they do have rights, and those rights can't allow them to pierce the privilege, but there have been cases which have held that the defendants have the exact same rights, and then in these First Amendment situations, there's to be no less of an application. So I don't think that the court should make any distinguish between whether or not this is a grand jury proceeding or not. I don't have grand jury powers as a defense attorney. I would have liked the prosecutors to have looked into it, but there you have it. They chose not to. Five hundred people to interview? I mean, they have investigators, they have officers, they could have chosen to have done that. They didn't do that. It shouldn't be held against me that I wasn't able to take advantage of that. So I have exhausted all those reasonable means that are available to me. Those are likely to have been found, and that's what the standard requires in the statute. Thank you. All right. Thank you. Mr. Schmitter, some rebuttal. Mr. Schmitter, Justice Carter, I'm happy to answer any questions you may have, but otherwise I've waived my rebuttal. Okay. All right. Thank you all for your arguments here today. The matter will be taken under advisement. A written disposition will be issued, and as I mentioned at the outset, Justice Littman will be participating in the resolution of this matter. So right now we'll be in a brief recess for a panel change before the next case.